UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

PHILLIP LITTLER,                          )
                                          )
                    Plaintiff,            )
                                          )
        v.                                )        No. 2:16-cv-00472-JMS-DLP
                                          )
CHRISTOPER MARTINEZ, et al.               )
                                          )
                    Defendants.           )

**Order Discussing Motion for Summary Judgment**

Plaintiff Phillip Littler is an inmate currently incarcerated at Wabash Valley Correctional Facility ("Wabash Valley"). He brought this action pursuant to 42 U.S.C. § 1983 against numerous State Defendants, Nurse P. Hagemeier, and Corizon. He alleges that the State Defendants routinely use excessive force against him during cell extractions, and that Corizon maintains a policy or practice of not providing medical treatment following those cell extractions. At issue in this case are uses of force against Mr. Littler on December 27, 2015, and his allegations that Nurse Hagemeier failed to provide him adequate medical treatment following those uses of force. The Court addressed the State Defendants' motions for summary judgment regarding the excessive force claims in a previous Order.

Presently pending before the Court and addressed in this Order is Nurse Hagemeier's and Corizon's (the "Medical Defendants") joint motion for summary judgment. In the previous summary judgment Order, the Court explained at length its concerns regarding what appear to be false sworn statements submitted by the State Defendants. The Court ordered one of the State Defendants' and his counsel to show cause why they should not be sanctioned. After these Orders were issued, the Medical Defendants filed their reply brief along with a second sworn declaration

from Nurse Hagemeier.  As explained further below, her second declaration includes what is may well be a false sworn statement.

The Court already observed that it hopes this case represents "an isolated incident of conduct and litigation gone awry, but is gravely concerned that it is not."  Filing No. 184 at 1. When the Court made this observation, it did not anticipate that the Court's concerns would deepen.  But they have.  Show cause orders similar to those issued to the State Defendants will issue by separate order.

For the reasons explained below, the Medical Defendants' motion for summary judgment is **denied**.

## I.
## Summary Judgment Legal Standard

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  A "material fact" is one that "might affect the outcome of the suit."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  If no reasonable

jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II.
## Background

### A.    Compliance with the Local Rules

Before setting forth the facts relevant to the Medical Defendants' motion for summary judgment, the Court must first determine which facts it may consider. In their reply brief, the Medical Defendants argue that the Court should treat their facts as undisputed because Mr. Littler's response fails to comply with the Local Rules in two respects.

First, the Medical Defendants point to his non-compliance with Local Rule 56-1. Subsection (e) requires a party to "support each fact the party asserts in a brief with a citation to" admissible evidence in the record. Subsection (f)(1) states that facts "supported by admissible evidence by the movant are admitted without controversy except to the extent that (A) the non-movant specifically controverts the facts in that party's 'Statement of Material Facts in Dispute' with admissible evidence[.]" The Medical Defendants argue that Mr. Littler failed to comply with these provisions because, although his response contains a "Statement of Material Facts in Dispute" section, the facts contained therein are not accompanied by citations to the record.

Second, the Medical Defendants argue that the Court should strike Mr. Littler's response because it exceed the permitted length. Local Rule 7-1(e)(1) provides that responses "may not exceed 35 pages," and Mr. Littler's response was 52 pages.

The Court has "discretion to require strict compliance with its local rules governing summary judgment." *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013) (citation and quotation marks omitted). "It does not follow, however, that district courts cannot exercise their discretion in a more lenient direction: litigants have no right to demand strict enforcement of local

rules by district judges." *Id.*; *see Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011) ("We have not endorsed the very different proposition that litigants are entitled to expect strict enforcement by district judges. Rather, it is clear that the decision whether to apply the rule strictly or to overlook any transgression is one left to the district court's discretion." (citation and quotation marks omitted)).

The Court will not enforce strict compliance with the Local Rules in this instance. First, Mr. Littler, who is proceeding pro se in this action, filed a response brief that is clearly written and articulates which of the Medical Defendants' facts he disputes. Second, the Medical Defendants have not set forth how they were prejudiced by Mr. Littler's non-compliance with the Local Rules.

Finally, although Mr. Littler technically did not comply with the Local Rules in the two respects outlined above, his non-compliance was only that—technical. As to the lack of citations to admissible evidence, the Medical Defendants overlook the fact that the factual assertions in his response are themselves admissible evidence, as his response brief is sworn under penalty of perjury. *See Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) ("By declaring under penalty of perjury that the [response] was true, . . . [the plaintiff] converted the [response], or rather those factual assertions in the [response] that complied with the requirements for affidavits specified in the rule . . . into an affidavit." (citation and quotation marks omitted)). Thus there was no need for Mr. Littler to then cite to other admissible evidence. As to Mr. Littler exceeding the 35-page limit, many of the handwritten pages in his response contain significantly fewer words than a page typed on a word-processor would. Thus it is likely his 52-page response brief is not much longer than a typed 35-page brief, if at all.

In sum, given that Mr. Littler is proceeding pro se, that his non-compliance with the Local Rules was at most technical, and that it did not prejudice the Medical Defendants, the Court will

take a more "flexible approach" by declining to strictly enforce the Local Rules, "as it is entitled to do." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). The Court will consider and include Mr. Littler's admissible evidence contained in his sworn response below.

### B. Factual Background

#### 1. Events on December 27, 2015

On December 27, 2015, Mr. Littler was subject to several uses of force by the State Defendants. Those uses of force are discussed in detail in the Court's previous Order denying the State Defendants' motion for summary judgment. *See* Filing No. 184. For the purposes of this motion, they only need to be set forth in limited detail.

Mr. Littler was escorted to a shower cell to be strip searched, but Mr. Littler refused to remove his clothing for the strip search. This led the State Defendants to utilize three different types of force against him.

First, defendant Justin Shroyer sprayed Mr. Littler with a chemical agent, OCV MK-9s. Not long thereafter, Mr. Littler was sprayed with at least a second round of the chemical agent. Mr. Littler states that the chemical agent "tremendously bothered" him. Filing No. 173 at 2. He asserts that he was "repeatedly" assaulted with it "over a protracted time frame." Filing No. 174 at 6.

Second, defendant Mark Shroyer shot Mr. Littler directly in the face at close range with a pepperball gun. Mr. Littler turned around "so as to no longer expose his face to the assault," and Mark Shroyer "immediately fired several more rounds in rapid succession to the back of [Mr. Littler's] head until the weapon stopped working." Filing No. 174 at 34; *see* Filing No. 173 at 2. Pictures taken after the fact and video evidence following the incident show that the plaintiff sustained significant injuries to at least his nose and upper lip, including substantial abrasions and

lacerations.  *See* Filing No. 93; Filing No. 169-1 at 2-3.  Specifically, the video shows blood dripping from Mr. Littler's mouth and nose.  *See* Filing No. 93.

Third, the cell extraction team—which includes five correctional officers—entered the shower cell.  The first two officers to enter the shower, Officers Bottoms and Thacker, tackled Mr. Littler into the wall (which Mr. Littler says broke his scapula).[1]  They then repeatedly struck Mr. Littler in the head with closed fists.  Eventually, he was placed in mechanical restraints and removed from the shower cell.

After Mr. Littler was removed from the shower, he was taken directly to Nurse Hagemeier at the nurse's station.  Nurse Hagemeier had been instructed by the Director of Nursing "to go to medical because security was about to perform a cell extraction" nearby.  Filing No. 188-1 at 2.  She had been waiting there "for about 6 or 7 minutes until Mr. Littler arrived with the officers." *Id.*

Nurse Hagemeier attests in her first sworn statement that Mr. Littler had "minor injuries to his nose and lip"—specifically, his "nose was raw, swollen, and bruised"—so she "cleaned the areas, made a visual assessment, and took the patient's vitals."  Filing No. 78-1 at 4-5.  She further asserts that he "voiced no complaints," and specifically "made no complaints regarding being sprayed with chemical or being shot with a pepper spray gun." *Id.* at 4.  In her second sworn statement (filed with the Medical Defendants' reply brief), Nurse Hagemeier states that any laceration on Mr. Littler's nose was slight, that his nose was swollen but did not appear broken, and that she did not believe he had a severe head injury.  Filing No. 188-1 at 3.  She attests that

---

[1] Mr. Littler previously identified the bone he fractured as his clavicle, but he has since clarified he fractured his scapula.  *See* Filing No. 189.  Thus any of his statements referencing his clavicle will be treated as statements regarding his scapula.

she offered him ice but he said he wanted to go back to his cell, and that she did not offer him any pain medications "due to him refusing any and all medical treatment." *Id.*

Mr. Littler paints a very different picture of his encounter with Nurse Hagemeier, which of course the Court must accept as true at this stage of proceedings. He says he specifically told Nurse Hagemeier that he was shot directly in the nose with a pepperball gun, was repeatedly hit by the correctional officers who extracted him from the shower cell, and was sore all over his body. Filing No. 181 at 5. Moreover, he says that his nose was not just bruised, swollen, and raw, it was also lacerated and broken. *Id.* at 4-5. He also asserts that he fractured his scapula. *Id.* at 9. Despite these injuries, Mr. Littler attests that Nurse Hagemeier did not actually assess his condition; instead, she only "attempted to wipe some dried blood that was caked into [his] mustache for a mere second and then immediately abandoned her effort when she realized that such would be a prolonged task to actually clean." *Id.* In short, Mr. Littler states that Nurse Hagemeier failed to meaningfully assess his condition and only half-heartedly attempted to clean his wounds before abandoning the task.

Notably, the video evidence directly supports one aspect of Mr. Littler's version of events, and it strongly suggests that Nurse Hagemeier's sworn declarations contain false statements. *See* Filing No. 93. Relevant here is that the video shows the officers escorting Mr. Littler to the medical room where Nurse Hagemeier attests she was waiting for him while the cell extraction occurred. Although the interaction between Mr. Littler and Nurse Hagemeier cannot be seen, parts of their discussion can be heard (while other parts are more difficult to hear). Not long into Nurse Hagemeier and Mr. Littler's discussion, he clearly states, "I just want to tell you for the record, they shot me in the face three times, [and] punched me in the head several times. I didn't resist." *Id.*

This video evidence almost certainly shows that Nurse Hagemeier's sworn statements contain false assertions of fact. Specifically, Nurse Hagemeier attempted to support her motion for summary judgment by attesting that she had no idea Mr. Littler was subjected to such serious uses of force—namely, being shot in the face with a pepperball gun or beaten by the officers. She states this specifically: "He [being Mr. Littler] never told me he was shot in the face, beaten, or otherwise assaulted by officers." Filing No. 188-1 at 3. Because the video shows this statement is most likely false, show cause orders regarding sanctions will issue to both Nurse Hagemeier and her counsel, just as they did to Assistant Superintendent Littlejohn and his counsel.

### 2. Other Medical Care Evidence

Mr. Littler attests that his injuries and the lack of medical treatment for them caused him difficulties in the days that followed. His nasal passages were swollen, making it difficult to breathe, and the wounds in them would repeatedly reopen and begin bleeding. Filing No. 181 at 17. He felt pressure behind his eyes and suffered excruciating headaches. Moreover, he says that his scapula was fractured and, since Nurse Hagemeier did not even examine his arm, he was unable to lift his arm "more than a few inches for nearly two months." *Id.* at 18.

Nurse Hagemeier attests that Mr. Littler had several opportunities to obtain medical treatment in the days following the uses of force on December 27, 2015. She presents the following evidence in support of that position. On December 29, 2015, January 5, 2016, and January 12, 2016, Mr. Littler refused his annual health screening, during which Nurse Hagemeier says he could have received medical treatment. Filing No. 78-1 at 5. On January 4, 2016, he refused to come out of his cell for a sick visit in response to three healthcare requests he had filed. *Id.*

Mr. Littler contests this evidence. First, he says his three healthcare requests show that he was seeking medical treatment, but he was never visited regarding them; they were instead ignored. The notion that he refused to cooperate with them, he says, is simply false. Filing No. 181 at 18-19. Second, Mr. Littler acknowledges that he refused his annual health screenings, but did so knowing that he could not receive medical treatment at them. If he requested such treatment, he says he would be directed to fill out a healthcare request form, which he already had done. *Id.* at 18-20.

### III.
### Discussion

The Court will first address Mr. Littler's Eighth Amendment medical claim against Nurse Hagemeier before turning to his Eighth Amendment policy or practice claim against Corizon.

### A.     Eighth Amendment Medical Care Claim

Mr. Littler asserts an Eighth Amendment medical care claim against Nurse Hagemeier regarding the healthcare he received after the uses of force against him on December 27, 2015. Because Mr. Littler was an inmate at Wabash Valley during this time, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "To determine if the Eighth Amendment has been violated in the prison medical context, [the Court] perform[s] a two-step analysis, first examining whether

a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc). To show deliberate indifference, "a plaintiff does not need to show that the official intended harm or believed that harm would occur," but "showing mere negligence is not enough." *Id.* at 728. Instead, a plaintiff must "provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." *Id.*

Nurse Hagemeier argues that Mr. Littler cannot meet either element. The Court will address each in turn.

### 1. Objectively Serious Medical Need

Nurse Hagemeier contends Mr. Littler did not have an objectively serious medical need after the uses of force. "An objectively serious medical need is one that has been diagnosed by a physician and that requires medical treatment, or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (citation and quotation marks omitted). Put differently, a medical need is serious "where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain[.]'" *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997)). The following circumstances are "indications that a prisoner has a serious medical need: The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 522-23 (citation and quotation marks omitted).

Nurse Hagemeier argues that Mr. Littler only suffered from swollen and bruised lips and nose, which are not sufficiently serious. But Mr. Littler's evidence is that he had a head injury

from repeated blows to the head, was sore all over his body, was bleeding from his mouth and nose (which was lacerated), and his nose and scapula may have been broken.[2] Filing No. 181 at 4-5, 9. He says he specifically told Nurse Hagemeier that he was shot directly in the nose with a pepperball gun and that he was repeatedly struck in the head by the correctional officers who extracted him from the shower cell and was sore all over his body. Unsurprisingly, the video evidence shows that these uses of force at least caused significant amounts of blood to be dropping from Mr. Littler's mouth and nose. *See* Filing No. 93. Mr. Littler attests that these injuries caused him significant pain.

The Court views such significant bleeding caused by trauma to the face by a pepperball gun alone an injury that is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *King*, 680 F.3d at 1018. In other words, such an injury is one "that a reasonable doctor or patient would find important and worthy of comment or treatment." *Hayes*, 546 F.3d at 523. Mr. Littler was not given even basic pain medication or ice for his substantial injury, and the Seventh Circuit has made clear that a medical need is serious "where the failure to treat a prisoner's condition could result in . . . the unnecessary and wanton infliction of pain[.]'" *Hayes*, 546 F.3d at 522. At the very least, Mr. Littler's evidence is sufficient to create an issue of fact as to whether he suffered from an objectively serious medical condition.

---

[2] The Medical Defendants object to Mr. Littler's testimony that he suffered a fractured nose and scapula (and other testimony related to his medical condition) under Rule 702, arguing that such testimony requires highly specialized medical knowledge. The Court need not definitely rule on this objection, however, because whether or not Mr. Littler actually suffered a fracture, Nurse Hagemeier's essentially complete failure to treat his wounds precludes summary judgment in her favor, as set forth below. Moreover, the Court need not determine whether Mr. Littler's nose and scapula were actually fractured in order to consider the fact the Mr. Littler believed them to be as relevant evidence. *See Conley v. Birch*, 796 F.3d 742, 747 (7th Cir. 2015) ("[F]racture[s] need not yet have been diagnosed as such to have demanded action on the part of [medical professionals].").

Nurse Hagemeier resists this conclusion, pointing to the Seventh Circuit's decision in *Pinkston v. Madry*, 440 F.3d 879 (7th Cir. 2006). There, the Seventh Circuit held that a "split lip and swollen cheek" from being punched by another inmate did not constitute an objectively serious medical need. *Id.* at 891. But as detailed above, Mr. Littler not only was repeatedly punched in the head, he was shot in the face at point blank range by a pepperball gun, which caused significant bleeding. And Nurse Hagemeier knew this had occurred. Moreover, Mr. Littler asserts that his nose and scapula were broken, but Nurse Hagemeier did not assess him thoroughly enough to determine the seriousness of any of these injuries. In short, Mr. Littler's injuries are substantially more serious than those in *Pinkston*.[3]

The foregoing evidence shows that there are genuine issues of material fact regarding whether Mr. Littler had an objectively serious medical need following the uses of force against him on December 27, 2015.

### 2. Deliberate Indifference

Nurse Hagemeier argues that even if Mr. Littler had an objectively serious medical need, she was not deliberately indifferent to it. To show deliberate indifference, "a plaintiff does not need to show that the official intended harm or believed that harm would occur," but "showing

---

[3] Nurse Hagemeier also argues, citing *Pinkston* for support, that the fact that Mr. Littler refused to leave his cell for his sick call visits after he filed three healthcare request forms shows his injuries were not serious because he did not seek medical treatment for them. But as noted above, Mr. Littler says his healthcare requests were ignored and that he did not refuse to come out of his cell for treatment, and the Court must take this evidence as true for purposes of summary judgment. Relatedly, Mr. Littler also acknowledges that he refused his annual health screenings, but he attests this was because he would not be provided medical treatment at them and would instead be told to fill out a healthcare request form. The Medical Defendants attempt to undermine this evidence by describing it as "speculat[ion]" that he would not receive medical treatment. Filing No. 188 at 4. But Mr. Littler has been incarcerated for several years and underwent numerous health screenings, and thus his statement is informed by substantial experience.

mere negligence is not enough." *Petties*, 836 F.3d at 728. Instead, a plaintiff must "provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." *Id.*

"If a risk from a particular course of medical treatment (or lack thereof) is obvious enough, a factfinder can infer that a prison official knew about it and disregarded it." *Id.* at 729. This includes delays in treatment, which "may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015); *see McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).

Nurse Hagemeier says she was not deliberately indifferent because she performed a "visual assessment, cleaned the affected area, and took [Mr. Littler's vital signs]," and that Mr. Littler voiced "no complaints." Filing No. 78-1 at 4. The Court, however, must take Mr. Littler's version of events as true at this stage of the proceedings. Again, he says he specifically told Nurse Hagemeier that he was shot directly in the nose with a pepperball gun, was repeatedly hit by the correctional officers who extracted him from the shower cell, and was sore all over his body. Filing No. 181 at 5. Despite these injuries, Mr. Littler attests that Nurse Hagemeier did not actually assess his condition; instead, she only "attempted to wipe some dried blood that was caked into [his] mustache for a mere second and then immediately abandoned her effort when she realized that such would be a prolonged task to actually clean." *Id.*

Given the serious trauma Mr. Littler informed Nurse Hagemeier he had just experienced— including being shot in the face with a high-powered weapon and punched in the head—a reasonable jury could conclude that half-heartedly cleaning the wound from which significant blood was dripping, failing to assess him for further injuries, and failing to provide him with even ice or over-the-counter pain medication amounts to deliberate indifference. Even setting aside whether Mr. Littler's nose and scapula were fractured, at the very least, failing to provide

essentially any medical treatment or more than a cursory examination for such injuries could have "unnecessarily prolonged [Mr. Littler's] pain." *Perez*, 792 F.3d at 777-78.

"[W]here evidence exists that the defendants knew better than to make the medical decisions that they did, a jury should decide whether or not the defendants were actually ignorant to risk of the harm that they caused." *Pettis*, 836 F.3d at 731. Taking Mr. Littler's version of events as true, this is the case here.

Accordingly, Mr. Littler has shown that there are genuine issues of material fact on both elements of his Eighth Amendment medical claim against Nurse Hagemeier. She is therefore not entitled to summary judgment on this claim.

### B.      Policy or Practice Medical Claim against Corizon

A private entity, such as Corizon, "that has contracted to provide essential government services is subject to at least the same rules that apply to public entities" under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 378-79 (7th Cir. 2017) (en banc). "The critical question under *Monell* . . . is whether a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents." *Id.* at 379. The Seventh Circuit in *Glisson* set forth several ways in which a plaintiff may prove this element:

> First, she might show that the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Second, she might prove that the constitutional deprivation[] [was] visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels. Third, the plaintiff might be able to show that a government's policy or custom is made . . . by those whose edicts or acts may fairly be said to represent official policy. As we put the point in one case, [a] person who wants to impose liability on a municipality for a constitutional tort must show that the tort was committed (that is, authorized or directed) at the policymaking level of government . . . . Either the content of an official policy, a decision by a final decisionmaker, or evidence of custom will suffice.

*Id.* (citation and quotation marks omitted) (alteration in original).

Corizon argues that there is no evidence of a policy or practice that caused the underlying harm—that is, Mr. Littler's failure to receive adequate medical care after the uses of force on December 27, 2015.  Corizon argues that the evidence instead shows that inmates must be evaluated by medical professionals after every use of force or cell extraction.

Mr. Littler contends otherwise.  He attempts to demonstrate this primarily via the second method outlined above—by proving "that the constitutional deprivation[ ] [was] visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels."[4]  *Id.* (citation and quotation marks omitted) (alteration in original).  Put differently, Mr. Littler contends that it is Corizon's "widespread custom" or "implicit policy" to not provide inmates with meaningful medical treatment following uses of force.  *Daniel v. Cook Cnty.*, 833 F.3d 728, 734 (7th Cir. 2016).

To establish this custom, Mr. Littler points to several incidents where he says he did not receive meaningful medical treatment after force was used on him during a cell extraction.  In each of three instances outlined below, Mr. Littler says he was subjected to a use of force during a cell extraction, and complained of injuries and pain to the nurse he was taken to immediately following the cell extraction, but was denied meaningful treatment for his injuries or pain.

First, Mr. Littler points to an incident on October 28, 2015, where he was disobeying orders and jammed his cell door.  *See* Filing No. 181-1 at 148-50.  Correctional officers extracted Mr.

---

[4] To support his policy or practice claim, Mr. Littler also points to the IDOC Health Care Services Directive 2.04, which discusses "the IDOC's obligation to provide offenders with health care services necessary for the treatment of serious health conditions[.]"  Filing No. 181-1 at 103.  The Medical Defendants contend that this policy is irrelevant to the medical treatment of inmates immediately following the use of force during a cell extraction.  The Court need not delve into this policy or the parties' disputes about it since summary judgment must be denied on other grounds.

Littler from his cell, during which Mr. Littler says he was purposefully choked. He was taken to Nurse Charlotte Holcomb, and he told her that his throat was sore because he was choked. Mr. Littler says she "completely disregarded him," and wrote in her report that she "[t]ried to explain that [the] chemical agent [he was sprayed with] would make [his] throat sore." *Id.* at 149.

Second, Mr. Littler was subject to another cell extraction on November 13, 2015. *See Id.* at 151-52. He was taken to see Nurse Mark Bender, who wrote in his report that Mr. Littler had a "1cm diameter abrasion . . . above [his] left eye" and that he "denies any further pain or discomfort or injury." *Id.* at 152. Mr. Littler states that this report is false in that he had a "deep abrasion-contusion that spanned several centimeters," and he did complain to Nurse Bender about pain and discomfort. *Id.* at 151.

Third, Mr. Littler points to the lack of treatment provided by Nurse Hagemeier after the cell extraction at issue in this case, which occurred on December 27, 2015. Specifically, he points to her report, which states that his nose was "raw, swollen and bruised," and that he "voiced no complaints." *Id.* at 154. But Mr. Littler says his nose was fractured and had "multiple lacerations," and he specifically told her "the officers had hit him and that his whole body felt sore." *Id.* at 153.

Taking Mr. Littler's evidence as true, as this Court must at summary judgment, these three incidents viewed together are sufficient for a reasonable jury to conclude that Corizon has a "widespread custom" or "implicit policy" of downplaying inmates' injuries after uses of force by correctional officers and then offering little or no medical treatment. *Daniel*, 833 F.3d at 734. Notably, the three incidents occurred in three consecutive months and involved three different nurses downplaying Mr. Littler's injuries on their medical reports and not providing him meaningful medical treatment, which supports Mr. Littler's contention that it was a Corizon

custom that "caused the constitutional deprivation" on December 27, 2015. *Glisson*, 849 F.3d at 379.

Corizon resists this conclusion on two primary bases. First, it argues that Mr. Littler "cannot rely solely on the circumstances surrounding his own medical treatment to establish the existence of a policy or practice." Filing No. 77 at 14 (citing *Palmer v. Marion Cnty.*, 327 F.3d 588, 597 (7th Cir. 2003)). In *Palmer*, the Seventh Circuit held that two "isolated incidents of misconduct by correctional officers in a period of year"—one of which the plaintiff was involved in and one he was not—"certainly fails to meet the test of a widespread unconstitutional practice." 327 F.3d at 596. Contrary to Corizon's suggestion, *Palmer* does not state or imply that an inmate cannot relying solely on incidents in which he or she is involved. Instead, it holds that two isolated incidents in a year is insufficient. But as detailed above, Mr. Littler details three incidents in three consecutive months involving three different nurses employed by Corizon. While not overwhelming evidence, it is markedly stronger than that presented in *Palmer*, and it is sufficient for a reasonable jury to conclude that an unwritten policy or practice exists.

Second, Corizon points to several instances where it says Mr. Littler was provided medical treatment following a cell extraction or he refused such treatment. *See, e.g.*, Filing No. 77 at 3-4. Three of these instances are the ones Mr. Littler disputes above, where he says that the nurses falsified their reports to downplay the extent of his injuries. Again, the Court must view factual disputes in Mr. Littler's favor at this stage of proceedings. Moreover, Mr. Littler specifically disputes that he ever refused medical treatment after a cell extraction. *See* Filing No. 181 at 35. He attests that while he is often "evaluat[ed]" by a nurse after a cell extraction, this does not amount to treatment for his injuries, as he explains for each of the three incidents above. *Id.*

Accordingly, Corizon's two bases for resisting Mr. Littler's evidence of an unwritten policy or practice fail to undermine the Court's ultimate conclusion that he has presented sufficient evidence to overcome summary judgment. Corizon is not entitled to summary judgment on Mr. Littler's Eighth Amendment claim.

### C.      Lack of Injury

The Medical Defendants lastly argue that they are both entitled to summary judgment because Mr. Littler cannot show that he was harmed by any constitutionally deficient medical care. But, as detailed above, Mr. Littler was not given even basic pain medication or ice for his substantial injuries. He attests that had Nurse Hagemeier "provided basic medical treatment," he "would not suffered as much as he did." Filing No. 181 at 43. Evidence that the lack of medical care caused "unnecessary and wanton infliction of pain,'" *Hayes*, 546 F.3d at 522, is sufficient to overcome summary judgment. Notably, the Medical Defendants do not continue to press this argument in their reply. For these reasons, they are not entitled to summary judgment on this basis.

### IV.
### Conclusion

For the reasons explained above, the Medical Defendants' motion for summary judgment, dkt. [76], is **denied**. Show cause orders providing an opportunity for Nurse Hagemeier and her counsel to show why they should not be sanctioned will issue separately. No partial final judgment will issue at this time.

**IT IS SO ORDERED.**


Date: 9/25/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

PHILLIP LITTLER
121098
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Jeb Adam Crandall
BLEEKE  DILLON  CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Jill Esenwein
INDIANA ATTORNEY GENERAL
jill.esenwein@atg.in.gov

Christopher Andrew Farrington
BLEEKE DILLON CRANDALL ATTORNEYS
drew@bleekedilloncrandall.com

Amanda Elizabeth Fiorini
INDIANA ATTORNEY GENERAL
Amanda.Fiorini@atg.in.gov