IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| PHILLIP LITTLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:16-cv-00472-JMS-DLP |
| | ) | |
| CHRISTOPHER MARTINEZ, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION FOR SANCTIONS AGAINST**
**JUSTIN SHROYER AND MARK SHROYER**
**\*\*REDACTED FILING – PUBLICLY AVAILABLE\*\***

**COMES NOW** Plaintiff, by his counsel, and respectfully moves for sanctions against Justin Shroyer and Mark Shroyer.  In the estimation of undersigned counsel, each of these defendants has given affidavit and/or deposition testimony that cannot be reconciled with indisputable video evidence in this case, and both witnesses also appear to have testified during their depositions in a manner that contradicts their earlier filed declarations.  Counsel requests that this Court set an evidentiary hearing to determine whether sanctions are appropriate and, if so, what sanctions are appropriate.  In support of this Motion, the plaintiff states as follows:

**Introduction**

1.      As has been noted previously (Dkt. 248 at 6-8), this Court "has inherent power to sanction a party who has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Secrease v. Western & Southern Life Ins. Co.*, 800 F.3d 397, 402 (7th Cir. 2015); *see also, e.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-50 (1991).  This power, of course, extends to false statements delivered under oath.  (*See* Dkt. 248 at 7-8, and cases cited therein).  On March 7, 2019

1

and March 11, 2019, undersigned counsel conducted the depositions of the majority of the State Defendants (other depositions are still waiting to be scheduled).   In counsel's opinion, in significant respects the deposition testimony of Sgt. Justin Shroyer and Sgt. Mark Shroyer cannot be reconciled with the video evidence or with other submissions that have been tendered in this case.   These facts are even more disconcerting given the emphasis that this Court has repeatedly placed on ensuring the veracity of all submissions.   The plaintiff requests that this Court require Sgt. Justin Shroyer and Sgt. Mark Shroyer to appear at an evidentiary hearing and to show cause as to why they should not be sanctioned for providing false testimony in this case.[1]

**Justin Shroyer**[2]

2.       Undersigned counsel believes that the video evidence in this case raises substantial reason to believe that Sgt. Justin Shroyer's affidavit and deposition testimony is false in at least two respects.   First, in his declaration (Dkt. 88-7), Sgt. J. Shroyer described two orders that he gave to Mr. Littler (and two responses he received from Mr. Littler) prior to spraying him with a chemical agent.   These sworn statements, which were offered on summary judgment, appear to be contradicted both by video evidence and by Sgt. J. Shroyer's deposition testimony.   And second, in his deposition, Sgt. J. Shroyer testified ████████████████████████████

---

[1]       To be clear: the plaintiff maintains that other testimony offered by Sgt. Justin Shroyer and Sgt. Mark Shroyer, as well as by other defendants, is also untrue.   Described in this Motion are only instances where the plaintiff believes that the proffered testimony contradicts either indisputable video evidence or other sworn submissions.

[2]       Justin Shroyer is no longer a sergeant but is instead a correctional officer.   (Dep. of J. Shroyer at 4 ll. 12-13).   Nonetheless, because he was a sergeant when the events giving rise to this case took place and in order to ensure consistency with other submissions, the plaintiff refers to him in this Motion as "Sgt. J. Shroyer."

Because the depositions of Sgt. J. Shroyer (Dkt. 257-1) and Sgt. M. Shroyer (Dkt. 264-1) have both been filed under seal—as has the Rule 30(b)(6) deposition of the Indiana Department of Correction (Dkt. 264-3)—no page numbers have been assigned by this Court's electronic system.   All citations to these depositions are therefore made to the internal page and line numbers of the deposition transcripts.

███████████████████████████████████████████████████████ This

testimony appears to be contradicted by video evidence of a June 2016 cell extraction of Mr. Littler

that was provided to counsel during the discovery process.

   *a.   Orders Prior to Utilizing the Chemical Spray Against Mr. Littler*

3.      On summary judgment, Justin Shroyer submitted a declaration attesting to, *inter alia*, the

following facts:

   5.  At approximately 12:45 p.m., I approached the shower door and ordered Offender
       Littler to comply with the strip search, but he refused.

   6.  I then ordered Offender Littler to submit to the application of mechanical restraints, but
       he refused.

   7.  In an attempt to gain compliance from Offender Littler, I utilized a burst of OCV
       MK9S, but Offender Littler was not bothered by the chemical agent.

(Dkt. 88-7 at 1 [¶¶ 5-7]).

4.      Video evidence in this case demonstrates that this description of events is almost certainly

false.  The range video shows Sgt. J. Shroyer fully enter the screen at a time-stamp of 12:56:07.4.

He walks directly up to the front of the shower and sprays the chemical agent at a time-stamp of

12:56:09.4—only two seconds after coming into view of the shower.[3]  Although the range video

does not contain audio and the quality of the video is such that it is impossible to tell with certainty

when a person is speaking, two seconds is insufficient time to give two verbal commands and to

await responses to both commands before utilizing the chemical spray; and the time to give those

commands (and await refusals) is significantly less if, as his declaration indicates, Sgt. J. Shroyer

---

[3]      As noted, in his affidavit Sgt. J. Shroyer indicates that he approached the shower door "[a]t
approximately 12:45 p.m."  The plaintiff has significant concerns about the timeline as it has been described
by Sgt. J. Shroyer and other defendants.  Nonetheless, in his deposition Sgt. J. Shroyer explained that ███
███████████████████████████████████████████████████████ (Dep. of J.
Shroyer at 15 l.15 through 16 l.1).  Thus, for purposes of determining the veracity of Sgt. J. Shroyer's
declaration, the 11-minute difference between his declaration and the time-stamp on the range video is of
no consequence.

first "approached the shower door."[4]

5.       Sgt. J. Shroyer first viewed the range video on March 6, 2019.  (Dep. of J. Shroyer at 12 ll. 22-24, 14 ll. 9-19).  At his deposition five days later, he testified as follows:



(Dep. of J. Shroyer at 63 l.2 through 62 l.1, 64 ll. 5-8).

6.       In other words, Sgt. J. Shroyer's affidavit testimony that he "approached the shower door," gave one order, received a response, gave a second order, and received a second response before he utilized the chemical spray appears to have changed: he now contends ███████████ ██████████████████████████████████████████████████. This testimony is inconsistent and inexplicable.  At the same time, that inconsistency appears to be lost on Sgt. J.

---

[4]       A copy of the range video was manually filed by the State Defendants on September 20, 2018 (Dkt. 192-1).  While the time-stamp on the range video measures to the thousandths of seconds, for ease of presentation the plaintiff has rounded all references to these time-stamps to the tenths of seconds.

Shroyer:



(Dep. of J. Shroyer at 142 ll. 3-17).

7.      Given the apparent inconsistencies in this testimony, undersigned counsel believes that it is appropriate for the Court to order Sgt. J. Shroyer to appear at an evidentiary hearing and to show cause why sanctions should not be issued against him for providing false testimony.[5]

      b.   *Cell Extraction of June 24, 2016*

8.      During his deposition, Sgt. J. Shroyer was also asked about his behavior during other cell extractions of Mr. Littler:



---

[5]      During an earlier show-cause hearing in this case, which took place on December 17, 2018, undersigned counsel questioned counsel for the State Defendants specifically about the manner in which Sgt. J. Shroyer's declaration appears to be contradicted by the range video.  (Dkt. 235 at 43 l.8 through 45 l.18).  In the estimation of counsel, the fact that, for more than two and a half months after this hearing, Sgt. J. Shroyer was not asked to view the range video raises significant concerns; indeed, ███████████████ ███████████████████████████████ (Dep. of J. Shroyer at 15 ll.9-11).  Nonetheless, counsel of course acknowledges that he was not privy to any of Sgt. J. Shroyer's conversations with his attorney during this period.

(Dep. of J. Shroyer at 101 ll. 5-16).

9.      This testimony also appears to be false.  During the discovery process, undersigned counsel obtained copies of videos of other occasions in which the cell extraction team was activated to remove Mr. Littler from his cell.  The video from an extraction that took place six months after the events giving rise to this litigation—on June 24, 2016—shows the team, led by Sgt. J. Shroyer, approach Mr. Littler's cell door.  (2016 Video at 2:00 through 2:16).[6]  Unlike the video of the extraction giving rise to these proceedings, the housing range in the 2016 Video is quiet and the audio appears to pick up every word spoken.  After approaching Mr. Littler's cell door, Sgt. J. Shroyer does not appear to give any order before entering Mr. Littler's cell with the extraction team.  (2016 Video at 2:17 through 2:26).

10.     Even though this video concerns a cell extraction other than that which forms the basis of the plaintiff's claims in this case, this evidence is still consequential to the merits of these proceedings.  After all, if Sgt. J. Shroyer (or other defendants) fail to offer Mr. Littler an opportunity to comply with orders before the cell extraction team is activated, this fact significantly undercuts the State Defendants' contention that these extractions always occur for a penologically sound purpose.  And this evidence is particularly compelling here, where noise on the range makes it impossible to tell with certainty whether Sgt. J. Shroyer's declaration testimony that he gave a verbal order immediately before entering the shower on December 27, 2015 (Dkt. 88-7 at 2 [¶ 11]) is accurate.  (*See* Extraction Video at 3:40 through 3:56 [admitted into evidence as Exhibit 18 during the show-cause hearing of January 8, 2019]).  The contradiction between Sgt. J. Shroyer's deposition testimony and the June 2016 video, of course, is also relevant to the witness's credibility.

---

[6]      The video of this 2016 cell extraction has been manually filed on today's date.  (Dkt. 263).

11.    It therefore appears that Sgt. J. Shroyer's deposition testimony is likely false insofar as he stated that ███████████████████████████████████████████████████ ████████████████████████████████████████ For this reason, too, undersigned counsel believes that it is appropriate for the Court to order Sgt. J. Shroyer to appear at an evidentiary hearing and to show cause why sanctions should not be issued against him for providing false testimony.

**Mark Shroyer**[7]

12.    Like the sworn testimony of Sgt. Justin Shroyer, undersigned counsel believes that the video evidence in this case raises substantial reason to believe that Sgt. Mark Shroyer's sworn testimony is false in at least three respects.  First, in his declaration (Dkt. 137-1), Sgt. M. Shroyer testified, among other things, that he had "personal knowledge" that Mr. Littler was twice sprayed with the chemical agent, and then continued to refuse officer orders.  But, during his deposition, he testified that ████████████████████████████████████████████ ████████████████████████████████.  Second, in his deposition, Sgt. M. Shroyer testified unequivocally that ██████████████████████████████████████ ████████████████████████████████████.  Video evidence, however, is clear that he did, in fact, do so.  And third, Sgt. M. Shroyer testified first that ██████ ███████████████████████████████████████████████████████████

---

[7]    Given that Sgt. Mark Shroyer's deposition has been filed on today's date, a word is necessary about Exhibit 41, which is attached to the deposition transcript but is not relevant to the present motion.  During Sgt. M. Shroyer's deposition, counsel had difficulty understanding the witness's testimony as it relates to the placement, or intended placement, of the various rounds of the pepperball weapon that were directed into the shower stall on December 27, 2015.  Counsel therefore drew a simple diagram to try to assist in this line of questioning and, in order to compensate for sub-par artistic skills, drew a smiley face on the figure intended to represent Mr. Littler.  (*See* Dep. of M. Shroyer at 47 l.19 through 49 l.9, 95 l.11 through 95 l.1 & Exh. 41).  Counsel's purpose in doing so was to make the diagram identifiable as an individual's face, and he did not intend to make light either of this litigation or the events giving rise to this litigation.

██████████████████████; on cross-examination, ████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████.  In reality, the range video continues for more than thirty-eight minutes after Sgt. M. Shroyer deploys the pepperball weapon without him re-entering the shower front area.

> ### a.   Mark Shroyer's Declaration

13.     On June, 22, 2018, Sgt. M. Shroyer submitted a declaration in this cause (Dkt. 137-1).  He indicates, first and foremost, that he "has personal knowledge" of the statements contained within his declaration.  He then states, in pertinent part, that "at approximately 12:45 p.m. [Mr. Littler] was in the . . . shower refusing to comply with the application of mechanical wrist restraints" and that "[a]fter two applications of a chemical agent, Offender Littler still refused to comply [with officer orders]."  (Dkt. 137-1 at 1 [¶¶ 2-3]).

14.     During his deposition, however, Sgt. M. Shroyer repeatedly ████████████████████ ████████████████████████████████████████.  For instance, he testified as follows with respect to his knowledge of the use of the chemical agent:





(Dep. of M. Shroyer at 26 l.24 through 27 l.9, 35 ll.6-18).

15.     In other words, Sgt. M. Shroyer swore in his declaration that he had "personal knowledge" that Mr. Littler was sprayed twice with the chemical agent and then continued to refuse orders. This is false.   Certainly undersigned counsel acknowledges that a lay witness may not fully comprehend a legal term of art such as "personal knowledge," but that is beside the point: during his deposition, Sgt. M. Shroyer made clear that ██████████████████████████████ ████████████████████████████████████████.

16.     Given this inconsistency between Sgt. M. Shroyer's affidavit testimony and his deposition testimony, undersigned counsel believes that it is appropriate for the Court to order Sgt. M. Shroyer to appear at an evidentiary hearing and to show cause why sanctions should not be issued against him for providing false testimony.

    *b.  Interaction with Justin Shroyer*

17.     In his deposition, Sgt. M. Shroyer was asked about his interaction with other persons immediately following his deployment of the pepperball weapon.  He testified as follows:



██████████████████████████████████████████████

(Dep. of M. Shroyer at 61 ll.16-18, 64 ll.12-24).

18.     This testimony is false.  The range video clearly and undeniably shows Sgt. J. Shroyer appear in front of the shower while Sgt. M. Shroyer is deploying or attempting to deploy the pepperball weapon.  (Range Video at 01:00:59.9).  Sgt. M. Shroyer then looks directly at his son, Sgt. J. Shroyer gestures for his father to leave the shower front area, and the two leave the area together as Sgt. J. Shroyer appears to reach to take hold of the weapon.  (Range Video at 01:01:02.2 through 01:01:10.6).  The inconsistency between Sgt. M. Shroyer's deposition testimony and the range video is even more startling, and likely cannot be explained by a lapse in memory, given two facts.  First, Sgt. M. Shroyer's entire appearance on the range video lasts approximately forty-six seconds.  (Range Video at 01:00:24.8 through 01:01:10.6).  And second, ████████████████ █████████████████████████.  (Dep. of M. Shroyer at 13 ll.6-11).

19.     Again, given the clear inconsistency between Sgt. M. Shroyer's deposition testimony and the video evidence in this case, undersigned counsel believes that it is appropriate for the Court to order Sgt. M. Shroyer to appear at an evidentiary hearing and to show cause why sanctions should not be issued against him for providing false testimony.

### c. *Retrieval of Unimploded Pepperball Rounds*

20.     Undersigned counsel also believes that there is substantial reason to doubt Sgt. M. Shroyer's veracity as it relates to his description of his movements after he deployed the pepperball weapon and left the shower front area.  Not only is his deposition testimony inconsistent, but it appears to be contradicted—again—by the video evidence in this case.

21. On cross-examination (and re-direct examination), Sgt. M. Shroyer testified as follows during his deposition:

> [redacted]

(Dep. of M. Shroyer at 88 ll.2-6, 91 ll.4-12, 91 l.24 through 92 l.1, 92 ll.15-23). Earlier in his deposition, under questioning from undersigned counsel, Sgt. M. Shroyer testified that, [redacted] (Dep. of M. Shroyer at 60 ll.20-25).

22. Sgt. M. Shroyer's deposition testimony is thus not even internally consistent: [redacted] (Dep. of M. Shroyer at 60 ll.20-25); then, [redacted]

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████ (Dep. of

M. Shroyer at 88 ll.2-6, 91 ll.4-12, 91 l.24 through 92 l.1, 92 ll.15-23).  Moreover, this final

testimony appears to be irreconcilable with the range video.  After all, after Sgt. M. Shroyer leaves

the shower front area the range video lasts another *thirty-eight and a half minutes* without Sgt. M.

Shroyer reappearing to retrieve unimploded pepperball rounds.  (Range Video at 01:01:10.6 through

01:39:49.2).

23.     Sgt. M. Shroyer's testimony concerning ███████████████████████████

███████ is also highly pertinent to the merits of this case.  After all, this testimony ███████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

(Dep. of Niccum & Curry at 98 l.21 through 100 l.12; *see also id.* at 63 l.14 through 64 l.14

███████████████████████████████████████████████████████

██████████████████████████████████████).[8] ████████████

███████████████████████████████████████████████████████

██████████████████████████████████ (Dep. of M. Shroyer at 58 ll.20-24)—is thus

highly relevant to whether his use of the pepperball weapon was undertaken for a legitimate

penological purpose.  ██████████████████████████████████

███████████████████████████████████████████████████████

---

[8]     Richard L. Curry and Major Eric Niccum were deposed jointly as designates of the Indiana Department of Correction pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.  (Dep. of Niccum & Curry at 8 ll.9-20 [Curry]; *id.* at 79 l.24 through 80 l.9 [Niccum]).

████████████.

24.     It therefore appears that there is substantial reason to question Sgt. M. Shroyer's deposition testimony concerning his actions after he finished deploying the pepperball weapon.  For this reason, too, undersigned counsel believes that it is appropriate for the Court to order Sgt. M. Shroyer to appear at an evidentiary hearing and to show cause why sanctions should not be issued against him.

### Conclusion

25.     Accordingly, counsel has substantial concerns about the sworn testimony of both Sgt. Justin Shroyer and Sgt. Mark Shroyer.  Certainly the Court may determine for itself whether additional proceedings are necessary, but counsel believes that it would be appropriate to order both Sgt. J. Shroyer and Sgt. M. Shroyer to appear at an evidentiary hearing to explain these and any other apparent inconsistencies in their testimony.

**WHEREFORE,** the plaintiff respectfully moves for sanctions against Justin Shroyer and Mark Shroyer, and requests all proper relief.

Gavin M. Rose
ACLU OF INDIANA
1031 E. Washington St.
Indianapolis, IN  46202
Ph:     317.635.4059, x106
Fax:    317.635.4105
<grose@aclu-in.org>

*Attorney for the plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was filed electronically on this 27th day of March, 2019. Parties may access the public version of this filing through the Court's electronic system, and all ECF-registered counsel of record will be served by operation of the Court's electronic system. A true and correct copy of the sealed version of this filing is being served on counsel for the State Defendants by electronic mail on this 27th day of March 2019.

*/s/ Gavin M. Rose*_____
Gavin M. Rose
Attorney at Law